## HOLLAND *v.* MILLER.

1. Guardian and Ward—Injunction—Imposition on Ward by Third Parties—Evidence.

In guardian's suit to enjoin defendants, the ward's great grandson and his wife, from unreasonably consuming food provided for the ward, about 90 years of age, from using ward's home improperly for laundry operations and from other misconduct, it was not error to receive in evidence, in order to show the relationship existing between defendants and plaintiff's ward, a written agreement between the ward and the defendant husband's grandmother relative to the grandmother's living with and rendition of service in caring for the ward, since such agreement was competent for such purpose, where it does not appear to have been tainted with fraud and had been executed some dozen years before plaintiff's appointment as guardian of her mother.

2. Contracts—Consideration—Injunction—Evidence.

Whether an agreement for care and support of an aged parent was supported by a valid consideration is immaterial where defendants in injunction suit were not claiming any rights thereunder but introduced the agreement merely for purpose of showing relationship existing between themselves and plaintiff's ward.

3. Guardian and Ward—Injunction—Imposition on Ward by Third Parties—Competency of Ward—Evidence.

In guardian's suit to enjoin ward's great grandson and his wife from visiting at ward's home, unreasonably consuming food provided for the ward, from using ward's home improperly for

References for Points in Headnotes

[5, 6] 28 Am Jur, Injunctions, §§ 29, 30.
[6] 25 Am Jur, Guardian and Ward, §§ 68, 77–79.
[7] 28 Am Jur, Injunctions, § 35.
[8] 19 Am Jur, Equity, § 448 *et seq.*
[9] 14 Am Jur, Costs, § 92.

laundry operations and from other misconduct, evidence did not support claim that the ward was not mentally competent to invite anyone to eat meals in her home.

4. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF MENTALLY INCOMPETENT PERSON.

The statute barring testimony of opposite party as to matters equally within knowledge of a mentally incompetent person has no application as to testimony offered by defendants in suit to enjoin them from certain alleged misconduct with respect to the defendant husband's great grandmother, plaintiff's ward, where such testimony did not involve contractual relations but merely bore on the conduct of defendants (CL 1948, § 617.65).

5. GUARDIAN AND WARD—INJUNCTION—MISCONDUCT OF THIRD PARTIES TOWARD WARD—EVIDENCE.

In guardian's suit to enjoin ward's great grandson and his wife from certain alleged misconduct with respect to the ward, trial court's conclusion that plaintiff was not entitled to injunctive relief as there was little likelihood of repetition of such conduct as had been improper *held,* proper under evidence adduced, especially where it is a fair inference that hospitality extended to defendants afforded some degree of pleasure to the ward.

6. SAME—INJUNCTION—IMPOSITION ON WARD BY THIRD PARTIES.

While a guardian has the duty of properly managing and conserving the estate of the ward, where the ward is an elderly person and it is not shown that her efforts to befriend her great grandson and his wife are impairing the estate to any appreciable extent, the circumstances for supporting the ward who is the mother of plaintiff were such as to insure the support of the ward in reasonable comfort during the balance of her life, the strict legal right of the guardian does not entitle her to equitable relief of injunction against defendants from consuming food provided for ward, from using her home for laundry operations and from other alleged misconduct.

7. INJUNCTION—DISCRETION OF COURT.

Granting injunctive relief is within the sound discretion of the court and must not be arbitrary.

8. EQUITY—RELIEF—STRICT LEGAL RIGHT.

A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress.

9. Costs—Briefs.

> No costs are awarded appellees upon affirmance of a decree, where they have not filed a brief.

Appeal from Cass; Mosier (Carl D.), J. Submitted June 10, 1949. (Docket No. 29, Calendar No. 44,443.) Decided September 8, 1949.

Bill by Elexis Holland, as guardian of Johanna Hughes, against Robert Miller and another for injunction restraining defendants from coming on premises of plaintiff's ward. Decree dismissing bill of complaint. Plaintiff appeals. Affirmed.

*Jones & Theiss,* for plaintiff.

Carr, J. Plaintiff as guardian of the person and estate of Johanna Hughes, her mother, filed this suit in circuit court to obtain injunctive relief against the defendants. At the time of Mrs. Holland's appointment as such guardian, in October, 1947, Mrs. Hughes was approximately 90 years of age. Her husband deceased in 1935, leaving as his heirs the widow and 3 daughters. By agreement between the parties the widow was given a life estate in, or at least the income from, a farm, belonging to the estate, comprising approximately 100 acres. Mrs. Hughes resided on this farm with her daughter Mrs. Mary B. Miller, who had lived with her parents for some time prior to the father's death. The record indicates that Mrs. Hughes was supported during the period in question here by the income derived from the farm.

The defendant Robert Miller is the great-grandson of plaintiff's ward, and the other defendant is his wife. The bill of complaint alleges in substance that defendants have unreasonably consumed the food provided for Mrs. Hughes and have used her home improperly for laundry operations; that

Robert has a violent temper; that he has used improper language in the presence of plaintiff's ward; and that defendants have disregarded notices from the plaintiff to remain away from the premises. The bill further asserts that, if defendants are permitted to continue in the conduct referred to, irreparable injury to the ward and her property will result. An injunction to restrain such conduct was sought.

Defendants filed their answer denying that the plaintiff was entitled to the relief sought, and asserting that they went to the premises of Mrs. Hughes and ate meals there at her invitation and also on the invitation of Mrs. Mary B. Miller, the grandmother of Robert. The answer further alleged that the grandmother was residing with plaintiff's ward pursuant to an agreement executed between them in October, 1935, copy of such agreement being attached to the answer. The instrument in question referred to Mrs. Miller's services in helping to care for Mr. Hughes prior to his death, and provided for her living with her mother so long as the parties mutually agreed thereto.

On the trial of the case in circuit court plaintiff testified in support of the averments of her bill of complaint. It appears from her statements that she thought defendants ate too many meals at the home of Mrs. Hughes and her daughter Mrs. Miller, that any use by them of the premises for laundry purposes was improper, that Robert's conduct was subject to criticism, and that because of prior difficulties with the law in which he had been involved he ought not to be allowed on the premises at all. She further indicated that she did not object to her mother entertaining friends and relatives other than the children and grandchildren of Mary Miller, plaintiff's sister. Her testimony also discloses that following her appointment as guardian she had not seen any improper conduct on the part of Robert toward his

great-grandmother, nor had she received any complaints from her ward as to such conduct.

Testifying in his own behalf, Robert Miller admitted that he had been in some difficulty when he was 15 years of age, and that he had on occasions indulged in intoxicating liquor to excess. He claimed, however, that he had reformed. At present he is approximately 20 years of age. It further appears from defendants' proofs that the laundry facilities in the home of plaintiff's ward were not used by them except on a few occasions, when the work was actually done by Mrs. Mary B. Miller and defendant Margaret. It was further shown by the proofs that they had resided in the vicinity of the home of Mrs. Hughes for a portion of the time only, after the appointment of plaintiff as guardian of her mother. It was defendants' claim in substance that they had not excessively infringed upon the hospitality of their grandmother and great-grandmother.

After listening to the proofs of the parties the trial judge came to the conclusion that the facts disclosed did not justify the granting of the injunctive relief sought by plaintiff. A decree was accordingly entered dismissing the bill of complaint, and plaintiff has appealed.

On the trial of the case the agreement above referred to between Mrs. Hughes and her daughter Mrs. Miller was offered in evidence, and was received over plaintiff's objection. On behalf of plaintiff it is contended that the exhibit was not competent. Apparently it was offered for the purpose of throwing light on the situation existing in the home of plaintiff's ward, particularly with reference to the relationship existing between parties involved in the instant controversy. The record does not support the suggestion of plaintiff's counsel that such agreement was tainted with fraud. Neither is there any evidence indicating that it was not made on the

date appearing therein. No claim is made that in October, 1935, Mrs. Hughes was not fully competent to execute an agreement of this character. Whether it was supported by a valid consideration is not material, inasmuch as defendants claim no rights based on it. For the purpose for which it was offered and received, it was admissible. It may be noted in this connection that Mrs. Miller testified, without contradiction, that she contributed to the purchase of groceries for use in the home.

It is also claimed by plaintiff that defendants should not have been permitted to testify as to invitations to them from Mrs. Hughes and Mrs. Miller. Such testimony was given by way of explanation of defendants' visits to the home and the hospitality extended to them there. It tended to explain the conduct of which plaintiff complained and against the continuance of which she sought equitable relief. The claim is stressed that Mrs. Hughes was not mentally competent to invite anyone to eat meals in her home, but the record, including the testimony of plaintiff, does not support such claim. Plaintiff stated in substance that her mother was able to carry on conversations with her, that she allowed her to handle checks received from the sale of cream, and that she furnished her with a checking account. Obviously plaintiff did not regard her mother as incapable of understanding what she was doing in ordinary transactions.

It is further claimed that in receiving the testimony as to invitations extended to defendants by Mrs. Hughes the trial court disregarded the provisions of CL 1948, § 617.65 (Stat Ann § 27.914) and particularly the following proviso therein:

"Provided further, That when the testimony of any person would be barred in case of the death of any of the persons hereinbefore mentioned, it shall also be barred if such person shall have been ad-

judged to be and still is at the time of the trial insane or mentally incompetent, as to all matters, which, if true, must have been equally within his knowledge at a time when he was sane and mentally competent."

The reading of the proviso quoted indicates that it has no application in the instant case. The invitations in question were extended by Mrs. Hughes to defendants after the proceedings in probate court resulting in plaintiff's appointment as guardian. We are not concerned with transactions taking place before incompetency was adjudged. Moreover, the testimony of which plaintiff complains was not offered on the theory of establishing contractual rights, but rather as bearing on the conduct of the defendants. The opinion of the trial court indicates that he so considered it. Plaintiff's claim of error in the admission of the proof is without merit.

The principal question at issue in the case is whether the facts established by the proofs of the parties entitle plaintiff to the relief sought. It is doubtless true that certain conduct in which Robert Miller indulged prior to the time that plaintiff was appointed as guardian for the person and estate of her mother was subject to criticism. The trial judge came to the conclusion that the proofs did not indicate the likelihood of a repetition of such conduct. He had the advantage of seeing the witnesses and listening to their testimony, and this Court cannot say that his conclusion was not well founded. It is a fair inference that Mrs. Hughes felt very kindly toward the defendants, and found some degree of pleasure in showing her regard by extending hospitality to them. The further fact should be noted in this connection that as a small boy Robert lived in her home, and she was responsible, in part at least, for his upbringing.

It is the theory of the plaintiff that as guardian of the property of the ward she is entitled to exclude

from the premises of the ward any person or persons that she may not desire to admit. Emphasis is placed on the duty of the guardian to properly manage and conserve the estate of the ward. It is insisted in consequence that the extending by the ward of hospitality to others is entirely subject to the control of the guardian. It does not appear, however, that the acts of Mrs. Hughes in seeking to befriend the defendants are impairing the estate to any appreciable extent. It is a fair conclusion that the agreement of the parties, after the death of Mr. Hughes in 1935, was prompted, in part at least, by a desire on the part of the daughters to insure sufficient income for the support of the mother in reasonable comfort during the balance of her life. The conclusion is not justified that the conduct of which plaintiff complains places such support in jeopardy. The proofs wholly fail to disclose the value of the food that has been furnished to defendants, nor what proportion thereof may have been furnished by the grandmother, Mrs. Miller.

The record indicates rather clearly that an unfortunate family feud has existed for some time past, and that the present case has resulted therefrom. Under the circumstances equity should not interfere. The controlling principle was stated by this Court in *Roy* v. *Chevrolet Motor Car Co.,* 262 Mich 663, 668, as follows:

"Granting injunctive relief is within the sound discretion of the court. The exercise of such discretionary power must not be arbitrary. Decision must be based upon the facts of the particular case. A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress."

In *Youngs* v. *West,* 317 Mich 538, 545, the Court quoted with approval from 30 CJS, pp 328, 329, as follows:

"Broadly speaking the sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity. So the granting of equitable relief. is ordinarily a matter of grace, and whether a court of equity will exercise its jurisdiction, and the propriety of affording equitable relief, rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case. Of course, this discretion is not an arbitrary one, but must be exercised in accordance with the fixed principles and precedents of equity jurisprudence, and in accordance with the evidence."

The trial court correctly held that the situation existing in the case at bar is not such as to justify interference by a court of equity. The protection of the interests of the ward does not require the granting of the injunctive relief sought against defendants. As the trial court suggested in his opinion, she should be permitted to enjoy, during the balance of her life, her associations with her relatives, including the defendants. The legal rights of the plaintiff as guardian do not entitle her to equitable relief as a matter of right.

The decree of the circuit court is affirmed. No costs are awarded inasmuch as appellees have not filed a brief.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.