**MICHNER PLATING COMPANY v. DAVIS DRILLING COMPANY, INC.**

1. TRIAL—EVIDENCE—PLEADINGS—AMENDMENT.
    Introduction of issue at trial not raised at pretrial conferences, without objection by the other party, and without amendment of the pleadings to conform to the proofs, is not condoned by an appellate court, but the defect is nugatory where the trial court made a finding of fact as to the issue.

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 11, 1038.
[2, 3] 19 Am Jur 2d, Corporations § 1263.
[4] 38 Am Jur 2d, Gas and Oil §§ 131–134; 36 Am Jur, Mines and Minerals §§ 171, 172, 222, 233.
[5] 38 Am Jur 2d, Gas and Oil §§ 121, 122; 36 Am Jur, Mines and Minerals § 159.
[6] 1 Am Jur 2d, Accounts and Accounting §§ 8, 50.
[7] 27 Am Jur 2d, Equity §§ 2, 19.
[8] 38 Am Jur 2d, Gas and Oil §§ 121, 122, 131, 134.

2. CORPORATIONS—CLOSELY HELD CORPORATIONS—NOTICE TO CORPORATION.

> Finding of trial court that notice to president of a corporation was in fact notice to the corporation *held*, supported by the evidence, where the corporation was closely held, its president had written checks in payment of corporate obligations and signed them as an individual, it had been his practice to purchase from the corporation oil wells which were productive and leave in the hands of the corporation nonproducing wells to be deducted for tax purposes, and agreement for purchase of a 1/8 working interest in an exploratory oil well claimed by the corporation to give it the right to get notice was accepted by signature of the president without indication of whether he executed the acceptance as an officer or resident agent of the corporation or individually.

3. SAME—SERVICE OF NOTICE.

> A corporation is an artificial personality that is visible only in its officers and agents, and notice can only be given it by serving some natural person who represents it in some agency capacity.

4. MINES AND MINERALS—OIL EXPLORATION—PARTICIPATION AGREEMENT—JOINT VENTURE.

> Finding of trial court that agreement by which plaintiff acquired a 1/8 working interest in an agreement to drill an exploratory oil well was a joint venture which terminated when the dry well was plugged and abandoned *held*, supported by the evidence, where the agreement provided for drilling of well, for assignment of the leasehold estate if a producing well were completed, and for plugging and abandonment if the well would not produce oil or gas in commercial quantities, and further provided that all matters not covered by the letter of agreement should be governed by the practices and customs prevailing in the area.

5. SAME—OIL EXPLORATION—PARTICIPATION AGREEMENT—JOINT VENTURE.

> Finding of trial court that letter inviting participation in a further exploratory oil well after plugging and abandonment of a dry well in which plaintiff had participated was a courtesy letter *held*, supported by the evidence, where the original agreement did not require any such offer to be made.

6. ACCOUNTING—EQUITY.

> An action for accounting is equitable in nature.

7. EQUITY—RELIEF—STRICT LEGAL RIGHT.
   A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress.

8. MINES AND MINERALS—EXPLORATORY WELL—FURTHER DRILLING OPERATIONS.
   A court may not properly activate an offer to participate in further drilling operations after the further drilling operations effected a producer, pursuant to claimed rights under agreement to drill an exploratory well under an oil and gas lease, where the offeree, if it had a right of election to participate, did not so elect.

Appeal from Hillsdale; McIntyre (Robert W.), J. Submitted Division 2 November 9, 1967, at Lansing. (Docket No. 3,611.) Decided March 27, 1968. Leave to appeal denied July 2, 1968. See 381 Mich 760.

Complaint by Michner Plating Company, a Michigan corporation, against Davis Drilling Company, Inc., a Michigan corporation, Donald E. Davis, and Marathon Oil Company, an Ohio corporation, for an accounting with respect to money from the sale of oil to Marathon by the other defendants, and for other relief. Judgment for defendants. Plaintiff appeals. Affirmed.

*Moore & Markel,* for plaintiff.

*Prettie, Parker & Hayes,* for defendant Davis.

*MacLean & Proppe,* for defendant Davis Drilling Company.

FITZGERALD, J. Plaintiff sought to share in the proceeds of a successful oil-drilling venture carried out by defendant Donald Davis. Marathon Oil Company holds these proceeds by reason of an injunction granted to plaintiff pending the outcome of

this lawsuit which prevents Marathon Oil from paying them out to the participants in the venture. Marathon Oil has no other part in this dispute. The trial court denied plaintiff a share in the proceeds and appeal to this Court followed.

The parties entered into an agreement on July 18, 1960, here set forth in its entirety:

"DAVIS DRILLING COMPANY, INC.
25716 SCHOOLCRAFT
DETROIT 39, MICHIGAN

"Michner Plating Company
520 N. Mechanic
Jackson, Michigan

"This letter is written to confirm our understanding of our arrangement with you concerning the matters herein expressed.

"We have entered into an agreement wherein we are to drill a well on the following described location:

(Chilson #4)   The East 1/2 of the southwest 1/4 of the southeast 1/4 of section 23, Scipio township, Hillsdale county, Michigan,

and we will receive a full interest subject to a 1/8 landowner's royalty and 3/8 of 8/8 overriding royalty.

"It is our understanding that you wish to join us in this venture and you agree to carry a 1/8 working interest therein, and we in due course, upon completion of a producing well, will assign you an undivided 1/8 interest in the above captioned prospect, subject to its proportionate part of the above mentioned 1/8 landowner's royalty and 3/8 of 8/8 overriding royalty.

"Davis Drilling Company, Inc., will act as a drilling contractor in the above mentioned venture, and we will move in drilling tools and drill said well and test the same in such a manner as to thoroughly test what is known as the Trenton-Black River Formation, expected to be encountered at approximate-

ly 3,600 feet, unless oil or gas is found in commercial quantities at a higher level.

"We as contractor are to furnish the drilling rig, tools, fuel, labor and supplies and all things commonly furnished by drilling contractor. We will also provide and pay for all expenses for leveling of the location, grading of the road, cost of surface pipe, and the cementing thereof, mud and mud additives, testing and geological services. We are to carry adequate workmen's compensation and public liability insurance to properly protect all parties concerned. If in our judgment it is determined that the well will not produce oil or gas in commercial quantities before the oil string casing is run, then we agree to plug and abandon the same.

"For the drilling of the above mentioned test well, you agree to pay us $6,000.00 which will be used to pay your proportionate share of the drilling costs of said well.

"In the event of a producing well, it is further agreed that the Davis Drilling Company, Inc., or its designated agent, shall be the operator of the above captioned leasehold estate and it will be its duty as operator to arrange for the oil string, the drilling and the testing of said well for production, the equipping thereof, and all other costs of completion and operation from casing point on, and the drilling of additional wells, if any, for which you agree to pay your proportionate part. It is mutually understood that you further agree to pay your proportionate part of all production expenses, future drilling, development and equipment costs incurred in the operation of the leasehold estate.

"As soon as practicable after completion of a producing well and upon payment by you of your proportionate part of all expenses and costs, including interest for delayed payments, incurred hereunder and upon execution by you of an Operating Agreement satisfactory to us, you will be given an assignment in and to the above described leasehold estate, subject only to its pro rata part of 1/8 land

owners royalty and 3/8 of 8/8 overriding royalty mentioned above.

"All matters not covered by this letter shall be governed by the practices and customs prevailing in this area.

"If this is your understanding of our agreement, please sign on the line below provided for that purpose, retain one copy of this letter for your files and forward one copy to this office.

Yours very truly,
DAVIS DRILLING COMPANY, INC.
By /s/   L. A. GARDNER

"Agreed to and accepted this 18th day of July, 1960.
/s/   WALTER MICHNER

Signature"

Chilson #4 did not produce, and it was plugged. On March 29, 1961, Davis Drilling allegedly assigned the entire interest in this lease to Donald Davis, its president, with a subsequent "ratifying" assignment also being made to Donald Davis dated November 15, 1962. However, on September 13, 1961, Donald Davis intended to drill again on the land where the first venture had failed and he sent a letter to those who had joined in Chilson #4, inquiring as to their interest in joining him in this endeavor. He requested a 10-day notification of intent and an additional $5,000 if the party were interested in pursuing Chilson #5. Plaintiff did not reply, Donald Davis drilled anew, and the well produced.

Plaintiff brought original action in the Hillsdale county circuit court stating that it had never received notification of a new venture from Donald Davis so that it retained an equitable interest in the land in spite of the failure of Chilson #4, the

interest entitling it to a share in the proceeds.[1] During the course of the trial, plaintiff introduced a new issue not brought out in the pretrial conference as to whether Donald Davis did in fact have the entire assignment from Davis Drilling Company at the time the second letter was sent, as the second assignment to him took place after that time. Defendants did not object to the new issue for reasons to be set forth below.

It is advisable to dispose of the "new issue" before proceeding with this appeal. Two pretrial conferences were held in this matter, the first on August 19, 1965, and a supplemental conference on January 3, 1966. Orders were filed by the court and copies addressed to all counsel following each conference. In these conferences, the issues of law were set forth by the court and confined to a single overriding issue, i. e., whether the giving of notice by Donald E. Davis to Walter E. Michner, as an individual, constituted notice to the Michner Plating Company, the corporation. During these conferences, counsel for plaintiff at no time objected to the question of Davis giving this notice as an assignee of Davis Drilling Company, Inc. Conversely, during the course of the trial, defendant at no time objected to the raising of this issue. The trial court foresaw the possibility that this might become a controverted appeal issue and stated in his opinion:

"As to the propriety of Donald E. Davis addressing the notice in his individual capacity, the question should not be considered as it was not raised

---

1 The complaint describes the agreement quoted above as the sale of a 1/8 working interest in an oil and gas lease, and implies that this interest would survive the drilling of a dry well. It also asserts, by implication, that plaintiff had a right to be given an opportunity to participate in any new well drilled on the same described lands, but fails to say whether this right arises from the asserted leasehold interest or by custom of the business.

at either pretrial or during the trial itself, but had it been raised, the court would have determined on the basis of the proofs that Donald E. Davis, as an assignee, had every right to give this notice of election. The assignment to him was duly recorded in the office of the register of deeds, and should any question have arisen in the mind of the plaintiff his authority to act would certainly be evidenced by the recorded assignments."

While we recognize that GCR 1963, 118.3, is designed to provide for the practice of amendment to conform to the evidence, we recognize also the comment on this court rule stating:

"Diligent counsel will, however, always move to have such variances corrected by actual amendment, in order to eliminate any necessity for troubling the appellate court with the matter and to have the record clearly show what was actually litigated for purposes of *res judicata*."[2]

While we can condone neither failure to amend, nor failure to object, we feel that the incorporation in the opinion of the trial court of the matter renders this particular defect nugatory.

The crux of the appeal, and the matter originally raised at pretrial, asks whether the notice given to Walter Michner was equivalent to notice to plaintiff Michner Plating Company. We find that we can, as did the trial court, answer this in the affirmative. It will be noted that the agreement for the purchase of a 1/8 working interest in Chilson #4 well was agreed to and accepted by Walter Michner, individually, *supra*. No indication is given whether Walter Michner executed this as an officer or resident agent of the corporation. The trial court placed heavy reliance on the evidence pre-

---

[2] 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 415.

sented, *i. e.,* that Michner Plating was a closely held corporation, that Walter Michner had previously written checks in payment of oil shares and signed them as an individual, and that it had been his practice to purchase from the Michner corporation wells which were productive and leave in the hands of the corporation nonproducing wells which could be then deducted for tax purposes. As the trial court stated:

"This evidence indicates a close working relationship between Michner and the corporation to an extent that the court is convinced as a matter of fact that the Michner Plating Corporation knew exactly what was going on and that notice to its president was in fact notice to the corporation."

In effect, Walter Michner was the Michner Plating Corporation, and fits nicely into the situation outlined by our Supreme Court in *Cox* v. *Railway Conductors' Co-operative Protective Ass'n* (1916), 194 Mich 213, wherein it is said (p 221):

"Defendant has but an artificial personality by reason of its corporate existence visible only in its officers and agents, and personal service of process can only be made upon it by serving some natural person who represents it in some agency capacity."

And so it was with Walter Michner's signature. His failure to qualify that signature as an individual bound the Michner Plating Company in the offer that was addressed to and sent to them.

One final matter arises asking whether the agreement of July 18, 1960, *supra,* was a joint venture which terminated when Chilson #4 well was plugged and abandoned. The trial court held that there was no forfeiture of a vested interest on the part of the plaintiff, but that the letter of agreement expressed a joint venture contract which expired

when the well proved to be noncommercial and that the letter of September 13, 1961, inviting the $5,000 participation in Chilson #5 was a courtesy letter to past investors inviting participation. We agree also with this finding. The letter of July 18 did not require any such offer and when the offer was made to him, Walter Michner did not choose to exercise the privilege of investment being offered him. Though the July 18 letter referred to "future drilling", we find that it also referred to Chilson #4 and cannot construe it to render the plaintiff liable for its proportional share on all future drilling on the leasehold.

While the trial court realized that the question of plaintiff's residual legal right to the fractional shares of oil in question, by virtue of the original letter of agreement, might be an issue, it likewise recognized the fact that this action was on the equitable side of the court and, thus, was a case in equity and not so much one of technical rights. Citing *Holland* v. *Miller* (1949), 325 Mich 604, the court concluded its opinion by quoting the syllabus:

"A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress."

Were it to be said *arguendo* that Michner had a right of election to participate in Chilson #5, the hard fact remains that he did not so elect, nor did the Michner Plating Company so elect. We decline, as did the trial court, to reactivate an offer that was not acted upon.

Affirmed. Costs to appellee.

T. G. KAVANAGH, P. J., and McGREGOR, J., concurred.