WALCH v CRANDALL

Docket No. 87701. Submitted June 10, 1987, at Grand Rapids. Decided
    November 2, 1987.

Desmer and Leona Walch brought an action in Newaygo Circuit
    Court against Henry and June Crandall seeking to obtain the
    mineral rights to real property the Walchs had purchased from
    the Crandalls in 1979 under a land contract which provided no
    exclusion or reservation as to mineral rights or, alternatively,
    an abatement in the purchase price to reflect the lack of
    mineral rights. Plaintiffs also sought recovery of their attorney
    fees. The Crandalls counterclaimed for reformation or recision
    of the land contract on the basis of mistake. Several individuals
    purportedly possessing interests in the mineral rights at issue
    were added as defendants. The trial court, Terrance R. Thomas,
    J., entered a judgment denying plaintiffs' claim for title in the
    mineral rights under the dormant minerals act or for an
    abatement in purchase price and denying the request for
    attorney fees. The trial court also denied the Crandalls relief
    under their counterclaim. Plaintiffs appealed and defendants
    Crandall cross-appealed.

    The Court of Appeals *held:*

    1. The trial court correctly determined that, under the provi-
    sions of the dormant minerals act, the various holders of the
    mineral rights at issue had not abandoned their interests. At
    the time of the execution of the land contract between plaintiffs
    Walch and defendants Crandall, an undivided one-quarter in-
    terest in the minerals was vested in Leonard and Elizabeth
    Allers and an undivided three-quarter interest was held by
    Walter Jones, as trustee of the heirs of Dexter Jones.

    2. The trial court, after determining that the Crandalls could

REFERENCES

Am Jur 2d, Costs §§ 72 *et seq.*

Am Jur 2d, Equity §§ 102 *et seq.*; 266, 267.

Am Jur 2d, Mines and Minerals §§ 119, 142.

Validity and construction of statutes providing for reversion of
    mineral estates for abandonment or nonuse. 16 ALR4th 1029.

Amount of attorneys' fees in matters involving real estate. 58
    ALR3d 201.

provide marketable title to only forty of the 210.59 acres subject to the land contract, did not err in offering plaintiffs damages which would be recoverable on recission, the money already paid plus interest and expenses, but denying plaintiffs' request for an abatement of the purchase price equal to the value of the reserved mineral rights. Plaintiffs had invoked the trial court's equitable jurisdiction by seeking specific performance. Under the competing equities in this case, the trial court correctly concluded that plaintiffs would realize an unwarranted windfall with the abatement sought.

3. Plaintiffs cited no authority under statute or court rule entitling them to attorney fees as to defendants Crandall or any inequitable result from the remedy granted by the trial court which would justify an award of attorney fees.

4. Because plaintiffs' action against the Crandalls and the action against the added defendants are one and the same, plaintiffs may not claim they are entitled to attorney fees under the common-law rule that a present plaintiff may recover fees incurred in a prior action caused by the wrongful conduct of the present defendants. Furthermore, assuming arguendo that there was a prior action, it could not have been caused by any wrongful conduct of the added defendants.

Affirmed.

1. MINES AND MINERALS — DORMANT MINERALS ACT — OIL AND GAS INTERESTS — ABANDONMENT — PRESERVATION OF INTERESTS.

The dormant minerals act provides that any person holding a mineral interest in any land, other than the surface owner, shall be deemed to have abandoned such interest unless he does one of five things relative to the land within any twenty-year period: (1) secures a drilling permit; (2) actually produces or withdraws gas or oil, either individually or as part of a pool; (3) sells, leases, mortgages or transfers such interest by recorded instrument; (4) uses the subject property for underground gas storage; or (5) records a notice of interest with the local register of deeds (MCL 554.291 *et seq.*; MSA 26.1163[1] *et seq.*).

2. DAMAGES — CONTRACTS — BENEFIT OF THE BARGAIN — RESCISSION.

Generally, the measure of damages for a seller's breach of a contract is the benefit of the bargain; however, in cases involving the breach of a contract for the sale of land, a buyer is not entitled to the benefit of the bargain unless the seller acted in bad faith but is entitled only to the amount which would be reasonable on rescission, normally the money already paid, plus interest and expenses.

3. EQUITY — RELIEF — STRICT LEGAL RIGHT.

It is the historic function of equity to grant such relief as justice and good conscience requires; thus, a strict legal right, if incompatible with the equities of the case, does not necessarily entitle a party to equitable redress.

4. EQUITY — APPEAL — FINDINGS OF FACT.

The Court of Appeals reviews equity cases de novo but will not disturb the trial court's findings unless convinced that those findings are clearly erroneous or unless the Court of Appeals would have reached a different result had it been in the trial court's position.

5. COSTS — ATTORNEY FEES.

Generally, attorney fees may not be awarded unless expressly authorized by either statute or court rule.

6. APPEAL — COSTS — ATTORNEY FEES.

The Court of Appeals will not reverse a trial court's decision to deny an award of attorney fees absent an abuse of the trial court's discretion.

*Varnum, Riddering, Schmidt & Howlett* (by *Teresa S. Decker*), for plaintiffs.

*Reber, Greer, Schuiteman, Stariha & Greer, P.C.* (by *Paul L. Greer*), and *Mark R. Schropp,* for defendants Crandall.

*Miller, Canfield, Paddock & Stone* (by *Michael L. Shiparski*), for added defendants Allers, Jones, Patterson and Haight.

Before: J. B. SULLIVAN, P.J., and G. R. McDONALD and J. M. GRAVES,* JJ.

J. B. SULLIVAN, P.J. Plaintiffs Desmer and Leona Walch initiated the instant action for specific performance in order to obtain the mineral rights in certain real property pursuant to a land contract entered into between themselves, as purchasers, and defendants Henry and June Crandall, as sell-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ers. The Crandalls counterclaimed for reformation or rescission of the land contract on the basis of mistake. The other named defendants were added as parties to this action because each purportedly possessed an interest in the mineral rights at issue. Plaintiffs now appeal as of right from the September 6, 1985, judgment of the circuit court denying their claim for title in the mineral rights under the dormant minerals act, MCL 554.291 *et seq.;* MSA 26.1163(1) *et seq.*, or for an abatement in the purchase price reflecting the lack of mineral rights, plus recovery of attorney fees. Also, the Crandalls cross-appeal as of right from that same judgment's denial of their counterclaim for reformation or rescission, and from the trial court's October 1, 1985, order denying their motion for relief from judgment. We affirm the trial court in all respects.

On March 9, 1979, plaintiffs and the Crandalls executed the land contract at issue. According to the terms of that agreement, the Crandalls were to convey to plaintiffs legal title to almost 211 acres of property by warranty deed, as well as an abstract of title showing marketable title. No exclusion or reservation was made as to the mineral rights. The purchase price for the property was $75,500. The dispute here concerns the mineral rights to 171 of these acres.

The Crandalls had initially purchased the property in 1958 from added defendants Leonard and Elizabeth Allers. The Allerses themselves had purchased it in 1949 from defendant Walter Jones, as trustee for the heirs of Dexter Jones. At the time of the 1949 transaction between Jones and the Allerses, Jones reserved an undivided three-quarter interest in the mineral rights and the exclusive right to lease the land in question for mineral development (an executive right). The remaining

one-quarter interest in the minerals was conveyed to the Allerses. In 1958, when the Allerses conveyed the property to the Crandalls, the Allerses reserved their mineral rights for a period of fifty years, a fact of which the Crandalls were aware at the time. Thus, at the time of the execution of the instant land contract in 1979, an undivided one-quarter interest in the minerals was vested in the Allerses and an undivided three-quarter interest was held by Walter Jones, as trustee of the Dexter Jones trust.

On April 14, 1981, plaintiffs' attorney tendered the balance due on the instant land contract and demanded a warranty deed. Plaintiffs also advised the Crandalls that an examination of the abstracts of title to the property revealed that the Crandalls did not appear to have marketable title to the mineral rights. When the Crandalls were unable to convey such marketable title, plaintiffs filed suit seeking specific performance of the land contract or, in the alternative, partial performance with an award of damages. The Crandalls answered plaintiffs' complaint, claiming that the parties had made a mutual mistake of fact as to the mineral rights in executing the land contract. They subsequently filed a counter-complaint, requesting the court to reform the contract to exclude the conveyance of mineral rights based on the alleged mutual mistake.

Following the trial, the court issued its findings of facts and conclusions of law. The court concluded that the Crandalls could provide marketable title to only forty of the 210.59 acres subject to the land contract. The court further held that the Crandalls had not sustained their burden of proving a mutual mistake regarding the mineral rights, thereby entitling plaintiffs to specific performance of the land contract to the extent the

Crandalls could provide marketable title and to damages for breach of contract due to the Crandalls' inability to convey the mineral rights at issue.

However, after reviewing the conflicting expert testimony on the value of the mineral rights, the court found that the Crandalls had not acted in bad faith so as to entitle plaintiffs to damages for loss of bargain. Moreover, the court declined to award plaintiffs an abatement from the purchase price because to do so would have been unconscionable and would have resulted in a windfall to plaintiffs. However, the court offered plaintiffs the opportunity to rescind the land contract and recover the amount paid on the contract, plus interest and expenses.

Plaintiffs rejected the trial court's offer of rescission and ultimately filed a motion with the trial court for relief from the judgment, alleging for the first time that the dormant minerals act had operated to terminate the mineral rights held by the Crandalls' predecessors in title. Plaintiffs thus reasoned that the Crandalls did have legal title in the minerals to convey to plaintiffs prior to the execution of the land contract. After ordering the addition of all interested parties as parties defendant and conducting an evidentiary hearing on the matter, the court denied the motion.

I

The first issue we address on appeal is whether the trial court erred in concluding that the dormant minerals act did not vest ownership of the disputed mineral interests in plaintiffs.

The dormant minerals act provides that any person holding a mineral interest (including oil and gas) in any land, other than the surface

owner, shall be deemed to have abandoned the
interest in favor of the surface owner unless such
person performs one or more of the enumerated
"acts of possession" during any twenty-year period.
These enumerated acts include: (1) securing a
drilling permit; (2) producing or withdrawing oil or
gas, either individually or as part of a pool; (3)
selling, leasing, mortgaging or transferring such
interest by recorded instrument; (4) using the sub-
ject property for underground gas storage; or (5)
recording a notice of interest with the local regis-
ter of deeds. MCL 554.291; MSA 26.1163(1); *Wag-
ner v Dooley,* 90 Mich App 759, 765; 282 NW2d
469 (1979), lv den 410 Mich 896 (1981).

As stated by our Supreme Court in *Van Slooten
v Larsen,* 410 Mich 21, 46-47; 299 NW2d 704
(1980), app dis 455 US 901 (1982), the act was
passed

> to reduce the likelihood that the presence of un-
> known or unlocatable owners or fractionalized
> ownership of severed interests would unnecessarily
> hinder or prevent the development of these re-
> sources by requiring an owner to do certain speci-
> fied acts indicating ownership or record a claim of
> interest every 20 years. It places no undue burden
> upon owners. Without such a requirement, knowl-
> edge of the ownership could be lost in time. Poten-
> tial resources go undeveloped in the absence of
> viable ownership.

Thus, "[t]he primary purpose of the act is not to
vest title to the severed interests in the surface
owner but rather is to facilitate development of
those subsurface properties by reducing the prob-
lems presented by fragmented and unknown own-
ership." *Id.,* p 44.

Plaintiffs first assert that the mineral interest
owners did not undertake any acts of possession

within a twenty-year period to protect their interest under the act. We disagree.

The record reveals that after Walter Jones reserved his three-quarter mineral interest in 1949, he executed and recorded oil and gas leases in 1954 and 1966. Plaintiffs claim that these leases did not toll the twenty-year period because they were signed by Jones as an individual (and by his wife), rather than as trustee for the Dexter Jones trust. Therefore, plaintiffs assert that the leases were not signed by the owner of the mineral interest. We are not persuaded that Jones should be divested of his asserted mineral interests simply because he failed to specify his title as trustee on the lease agreements. The relevant inquiry should not be whether such a specification was noted; rather the relevant inquiry should be whether the transaction was actually conducted on behalf of the trust. Plaintiffs have failed to provide us with any evidence that it was not.[1]

More importantly, adopting the harsh result urged by plaintiffs would not further the purpose of the act. As previously stated, the purpose of the act is to facilitate mineral development by reducing the problems presented by fragmented and unknown ownership, not to vest title in the severed mineral interest in the surface owner. *Van Slooten, supra,* p 44. Where, as here, the subsurface properties were being developed under a lease executed by the legal owner, the trustee, the purpose of the act was satisfied. Thus, the Jones lease agreements were sufficient to protect his three-quarter interest in the subject mineral rights.[2]

---

[1] We note in this regard that the fact that Jones' wife signed the lease agreements proves nothing more than that her signature appeared unnecessarily on those documents.

[2] We find this case to be distinguishable from *Wagner, supra,* relied on by plaintiffs. There, a panel of this Court held that the recordation

Similarly, and contrary to plaintiffs' assertion, a lease executed by Allerses in 1972 served to protect his one-quarter interest in the minerals, notwithstanding that he may not have had authority to do so due to Jones' prior reservation of that executive right. The act speaks only of an owner of a mineral interest undertaking some act of possession to give notice of nonabandonment. This Allers has done. We do not believe the spirit of the act will be promoted by granting plaintiffs standing to assert the executive right of another in this manner.

Consequently, by executing the stated lease agreements, added defendants Jones and Allers sufficiently protected their respective mineral interests under the act. The trial court did not err in ruling that their interests were not abandoned in favor of the Crandalls and not subject to conveyance by the land contract involving plaintiffs.[3]

II

Given our finding of nonabandonment in favor of the mineral-interest holders, we must next consider whether the trial court erred in refusing to award plaintiffs damages due to the Crandalls' failure to convey marketable title. Plaintiffs contend that they are entitled to an award of damages

of a deed to the surface rights by the buyers of such rights after the original deed was destroyed by a fire did not operate to toll the twenty-year period of the act in favor of the sellers who had reserved the mineral rights. We reasoned that "[i]mplicit in the legislative scheme is the requirement that the owner of the interest in oil and gas take some action to indicate nonabandonment of the interest." 90 Mich App 765. Mr. Jones, the legal owner of such an interest here, complied with this requirement.

[3] Our disposition of the issue in this manner renders it unnecessary to address plaintiffs' argument that the actual production by the oil and gas wells on the property was an insufficient act of possession because production was not at commercially productive levels.

representing the value of the mineral rights reserved by the prior holders.

Initially, the trial court held that plaintiffs were not entitled to "benefit of the bargain" damages because the Crandalls had not acted in bad faith. *Soloman v Western Hills Development Co (After Remand)*, 110 Mich App 257, 265-266; 312 NW2d 428 (1981). The trial court stated:

> In the case at issue, the Court can find no bad faith on the part of the seller. Neither party addressed or examined the title to the land prior to the sale. The defendants thought they owned title to the oil, gas and mineral rights and are not refusing to convey such title as they have. Defendants have not conveyed title to a third party. The defendants did not sell the land with the expectation that they would acquire a better title from a third person prior to the time it became necessary for them to perform. Also, it was well established at trial that the plaintiff did not purchase the land for the purpose of oil and gas exploration but rather for the purpose dairy farming within which he was already engaged. The matter of the oil and gas rights to the real estate in question was of little concern to either the plaintiffs or the defendants until after plaintiff learned of the renewed interest in the Huber Oil Field.

After reviewing the record, we agree with the trial court that the Crandalls did not exhibit any wrongful conduct from which an inference of bad faith may arise. Their failure to review the abstracts prior to the transaction and their reliance on the prior representations of a Mobil Oil Company leasing agent concerning the status of the mineral rights, as complained of by plaintiffs, may have been indicative of negligent behavior, but it certainly did not constitute bad faith.

Given its finding of a want of bad faith on the

part of the Crandalls, the trial court offered plaintiffs damages in the amount which would be recoverable on rescission, the money already paid plus interest and expenses. *Soloman, supra.* Plaintiffs however sought the alternative remedy of partial specific performance with an abatement of the purchase price in the amount of the value of the reserved mineral rights. See, e.g., *Kruger v Agnor,* 321 Mich 131, 136-137; 32 NW2d 365 (1948). Plaintiffs now maintain that the trial court's refusal to grant them this alternative remedy was likewise error.

In responding to this claim, we note that the trial court's equity jurisdiction was invoked by the complaint for specific performance. See, e.g., *Edidin v Detroit Economic Growth Corp,* 134 Mich App 655, 660; 352 NW2d 288 (1984). It is the historic function of equity to grant such relief as justice and good conscience requires. *Levant v Kowal,* 350 Mich 232, 241; 86 NW2d 336 (1957). Thus, a strict legal right, if incompatible with the equities of the case, does not necessarily entitle a party to equitable redress. *Michner Plating Co v Davis Drilling Co, Inc,* 10 Mich App 358, 367; 159 NW2d 366 (1968), lv den 381 Mich 760 (1968). The court may deny equitable relief if such relief, as requested, would cause defendants considerable hardship. *Zlydasdyk v Lucas,* 29 Mich App 584, 588; 185 NW2d 838 (1971), lv den 384 Mich 821 (1971). A trial court's decision in an equity action is reviewed de novo and will not be reversed unless the findings are clearly erroneous or the reviewing court is convinced that it would have reached a different result had it occupied the position of the trial court. *Vergote v K mart Corp (After Remand),* 158 Mich App 96, 103; 404 NW2d 711 (1987).

Reviewing the lower-court record in this man-

ner, we affirm its decision that plaintiffs ought not be compensated as they desire. According to the court-appointed expert, plaintiffs paid $75,500 for all 211 acres. At the time of the contract, the 171 acres in question had a surface value of $67,200 and mineral rights valued at $41,600. As of the date of the breach, the surface value remained the same, while the mineral rights increased in value to $46,000. Accordingly, if plaintiffs were to receive an abatement from the purchase price in an amount equal to the value of the mineral rights at the time of the breach, they would receive property with a surface value of $67,200, plus the additional acreage for a new purchase price of $29,500. Moreover, the surface value of all the acreage purchased was approximately $35 more per acre than what plaintiffs contracted to pay already. Granting plaintiffs' request for damages, as the trial court noted, would thus grant plaintiffs a considerable windfall, as well as cause the Crandalls a considerable hardship not intended at the time of the bargain.

Additionally, we consider the conflicting evidence on the factual issue of whether plaintiffs purchased the property for dairy farming and not for mineral development. Although plaintiffs assert that the trial court erred in finding that their sole purpose for buying the land was for dairy farming, our review of the testimony indicates that this finding was not clearly erroneous. We are not persuaded that the damages claimed now by the plaintiffs, to wit, the loss of the mineral rights, were in the contemplation of the parties at the time the contract was made. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 414; 295 NW2d 50 (1980).

For these reasons, we are not convinced we would have reached a different result had we been

in the position of the trial court. The trial court did not err in fashioning a remedy to suit all the equities of the case. Because we affirm the trial court in the Crandalls' favor in this regard, we find it unnecessary to review their claims concerning mutual mistake and conspiracy to defraud.

III

Finally, plaintiffs argue that the trial court erred in denying them attorney fees incurred in prosecuting this action.

Generally, attorney fees may not be awarded unless expressly authorized by either statute or court rule and we will not reverse a decision to deny attorney fees absent an abuse of discretion. *Century Dodge, Inc, v Chrysler Corp,* 154 Mich App 537, 544-545; 398 NW2d 1 (1986).

As to the Crandalls, plaintiffs cite no statutory or court-rule authority to support their claim for fees. Instead, they argue that the trial court had inherent authority within its equity jurisdiction to grant such an award. Because we found the remedy granted by the trial court to be equitable, plaintiffs have not demonstrated the inequitable result required to justify the award. *Kennedy v Brady,* 43 Mich App 760, 765; 204 NW2d 779 (1972).

As to the added defendants, plaintiffs maintain they should have been granted attorney fees under the common-law exception that a present plaintiff may recover fees incurred in a prior action caused by the wrongful conduct of the present defendants. This claim is equally without merit, as the exception is simply not applicable. The action against the Crandalls and the action against the added defendants are one and the same. It makes no difference that they are separate parties who were

brought into the litigation at different times. See *G & D Co v Durand Milling Co, Inc,* 67 Mich App 253, 258; 240 NW2d 765 (1976). Additionally, even assuming arguendo that there was a prior action, it was not caused by the wrongful conduct of the added defendants. Certainly, the added defendants did not cause plaintiffs to bring this action merely by being heirs of Dexter Jones.

Affirmed.