ENERGETICS, LTD v BENCHLEY

Docket No. 124614. Submitted January 8, 1991, at Grand Rapids.
Decided May 7, 1991, at 10:05 A.M. Leave to appeal sought.

Energetics, Ltd., brought an action in the Clare Circuit Court for
a determination of which among competing claimants were
owed gas, oil, and mineral royalties with respect to a parcel of
property whose surface was owned by Elmer R. Benchley and
Virginia M. Benchley and whose severed gas, oil, and mineral
rights were owned in fractional shares by the Benchleys and
others. The court, Kurt N. Hansen, J., on stipulated facts,
determined that the royalties were owed not to the Benchleys
as the surface owners but to the other owners of the severed
gas, oil, and mineral rights, ruling that the twenty-year dor-
mancy period of the dormant minerals act, MCL 554.291; MSA
26.1163(1), did not begin until the expiration of the leases
involved and that the owners of the mineral rights had not
abandoned their interests during the period between the leases
they or their predecessors in interest granted and recorded in
1951-52 and 1977-78. The Benchleys appealed.

The Court of Appeals held:

The dormant minerals act provides that a severed interest in
oil or gas which, for a period of twenty years, has not been sold,
leased, mortgaged, or transferred by an instrument recorded
with the register of deeds for the county where the interest is
located, in the absence of the issuance of a drilling permit,
actual production, or use in underground gas storage opera-
tions, is deemed abandoned and vests in the owner of the
surface unless the owner of the severed interest records a claim
of interest.

The trial court in this case clearly erred in determining that
transfers of interest avoiding the operation of the act occurred
when the first recorded leases expired. The act clearly requires
that such transfer or surrender of interest must be recorded.
Because the transfers of interest were not recorded at the

REFERENCES

Am Jur 2d, Gas and Oil §§ 208, 210.
Validity and construction of statutes providing for reversion of
mineral estates for abandonment or non-use. 16 ALR4th 1029.

expiration of the leases, ownership of the severed interests vested in the Benchleys as the surface owners.

Reversed.

GAS AND OIL — DORMANT MINERALS ACT — ABANDONMENT OF INTERESTS.

The transfer of a severed oil or gas interest to its original owner and lessor upon termination of an oil or gas lease recorded with the register of deeds for the county in which it is located will not prevent the interest from being deemed abandoned under the dormant minerals act unless the transfer is recorded with the register of deeds (MCL 554.291; MSA 26.1163[1]).

*David J. Dreyer,* for appellants Benchley.

*Honigman, Miller, Schwartz & Cohn* (by *Mark A. Stern*), for appellee Northern Michigan Health Foundation.

*Donald C. Coulter,* for appellees Whitmill, Straus, Griffin, Austin, and Beebe.

Before: GILLIS, P.J., and MACKENZIE and WEAVER, JJ.

PER CURIAM. Defendants-appellants appeal as of right from a circuit court order which determined that defendants-appellees were entitled to royalties from plaintiff. We reverse.

Plaintiff filed an action for a determination of whom among competing claimants it should pay royalties for gas, oil, and mineral rights.

The pertinent history of this case begins in 1933, when Edwin J. Whitmill and Lola J. Whitmill purchased eighty acres. In 1945, the Whitmills conveyed this land to Archie and Evelyn Cudney, but reserved one-half of the oil, gas, and mineral rights. On July 19, 1951, the Whitmills executed a lease with a primary term of ten years with Sun Oil Company. That lease was recorded on September 28, 1951. The lease would continue as long as

oil or gas was produced. If drilling did not begin by July 19, 1952, the lease would terminate, unless Sun Oil Company paid the Whitmills forty dollars. Sun Oil Company could surrender the lease by delivering or mailing a release to the Whitmills or by placing a release or discharge thereof on record in the proper county.

In 1952, Lola Whitmill died, and Edwin Whitmill acquired the gas, oil, and mineral rights pursuant to his right of survivorship. Shortly thereafter, Edwin J. Whitmill executed deeds to his four surviving children, Oak G. Whitmill, Ruby M. Straus, Lloyd B. Whitmill, and Ralph E. Whitmill; however, Edwin apparently never delivered the deeds and continued to collect lease payments until 1959. Edwin Whitmill died in 1974. There was a dispute with respect to the validity of the deeds, in which case Edwin Whitmill's interest in one-half of the gas, oil, and mineral rights would pass under the laws of intestacy. Edwin Whitmill's heirs would be his surviving children and the issue of Darwin E. Whitmill, a son who had predeceased him. Darwin Whitmill had three children, Darlene I. Griffin, William D. Whitmill, and Terry I. Whitmill. Edwin's son, Lloyd, died shortly after his father, leaving his wife, Rhoda E. Whitmill, and six children, Lyle E. Whitmill, Ronald I. Whitmill, Elva B. Austin, Alvin L. Whitmill, Arla Whitmill, and Verna J. Beebe, as heirs. Thereafter, Ralph E. Whitmill died intestate, leaving his brother Oak G. Whitmill, his sister Ruby M. Straus, and the children of his deceased brothers Lloyd and Darwin as heirs. After the instant lawsuit was started, Oak G. Whitmill also died, and his sons, Oak R. Whitmill and Davey G. Whitmill, were substituted in his place. The deeds Edwin had executed in 1952 were filed in 1977 and 1978 by his remaining children. The Whitmill heirs executed leases with

Hunt Oil Company which were recorded in 1977 or 1978. The Whitmills, except Darwin's children, also filed claims of interest in 1978. We note that before the instant lawsuit was filed, the Whitmills resolved the dispute over their respective entitlements to the gas, oil, and mineral rights among themselves.

The remaining gas, oil, and mineral rights were disposed of in the following manner. On June 27, 1951, the Cudneys also entered into a gas and oil lease with Sun Oil Company which contained terms similar to the ones contained in the lease executed by Edwin J. and Lola J. Whitmill and which was recorded on September 28, 1951. If drilling did not begin before June 27, 1952, the Cudneys were to receive forty dollars or the lease would be cancelled. On August 29, 1952, the Cudneys conveyed five-eightieths of the gas, oil, and mineral rights to T. Chalmers and Louise Curtis. The mineral deed was recorded on September 22, 1952, and was subject to the previously executed lease. In November 1978, the Curtises executed a lease with Hunt Energy Corporation. After several conveyances, Northern Michigan Health Foundation (NMHF) acquired the mineral deed in 1985.

In 1967, the Cudneys sold the eighty acres and the remaining thirty-five eightieths of the gas, oil, and mineral rights to the Benchleys. The Benchleys claim that title to all of the gas, oil, and mineral rights vested in them because the Whitmill heirs and the Curtises failed to comply with MCL 554.291; MSA 26.1163(1), which became effective on September 6, 1963, and which provides:

> *Any interest in oil or gas in any land owned by any person other than the owner of the surface, which has not been sold, leased, mortgaged or transferred by instrument recorded in the register*

*of deeds office for the county where such interest
is located for a period of 20 years shall,* in the
absence of the issuance of a drilling permit as to
such interest or the actual production or with-
drawal of oil or gas from said lands, or from lands
covered by a lease to which such interest is sub-
ject, or from lands pooled, unitized or included in
unit operations therewith, or the use of such inter-
est in underground gas storage operations, during
such period of 20 years, *be deemed abandoned,
unless the owner thereof shall, within 3 years
after the effective date of this act or within 20
years after the last sale, lease, mortgage or trans-
fer of record of such interest* or within 20 years
after the last issuance of a drilling permit as to
such interest or actual production or withdrawal
of oil or gas, from said lands, or from lands cov-
ered by a lease to which such interest is subject, or
from lands pooled, unitized, or included in unit
operations therewith, or the use of such interest in
underground gas storage operations, *whichever is
later, record a claim of interest as hereinafter
provided.* Any interest in oil or gas deemed aban-
doned as herein provided shall vest as of the date
of such abandonment in the owner or owners of
the surface in keeping with the character of sur-
face ownership. [Emphasis supplied.]

The Benchleys argued that the Whitmills and
NMHF's predecessors did not record an interest in
the gas, oil, and mineral rights for more than
twenty years (i.e., from the time the leases were
recorded in 1951 until the new leases were re-
corded in 1977 and 1978) and, therefore, aban-
doned those rights pursuant to the statute.

The Whitmills argued that the lease executed by
Edwin J. and Lola J. Whitmill on July 19, 1951,
remained valid until July 19, 1961, and the
twenty-year period of the statute did not begin to
run until that later date. Hence, the Whitmill
heirs argue that they complied with the statute by

filing leases and claims of interest before July 19, 1981.

NMHF claimed that the June 27, 1951, lease executed by the Cudneys continued until June 27, 1961, and that the lease recorded by the Curtises on November 30, 1978, was sufficient to comply with the statute.

The Whitmills and NMHF both relied on this Court's decision in *Mask v Shell Oil Co,* 77 Mich App 25; 257 NW2d 256 (1977). There, certain trustees conveyed property to the Barneses by a deed recorded on June 1, 1940, but reserved the mineral rights therein. On May 31, 1944, the trustees leased the mineral rights to Sun Oil Company by a lease with a primary term of ten years and as long thereafter as either gas or oil was produced. The lease was recorded on June 28, 1944. Sun Oil paid rent until February 5, 1954, and then executed a release and surrender of the lease, which was recorded on March 8, 1954. On June 29, 1953, Sun Oil Company obtained a drilling permit for part of the leased premises. On November 11, 1971, the trustees executed a gas lease with North Michigan Land and Oil Corporation, which was recorded on November 24, 1971. North Michigan Land and Oil Corporation assigned the lease to Thomas B. Mask and recorded the lease on December 17, 1971. Mask filed suit against the Barneses and Shell Oil Company to quiet title to the gas, oil, and mineral interests. The Barneses and Shell Oil Company claimed that the twenty-year statutory period expired in 1964 (i.e., twenty years after the 1944 lease). Mask argued that the date the drilling permit was issued was the first date on which the statutory period could begin to run. Moreover, Mask argued that the release and surrender of the lease in 1954 acted as a transfer of interest and began the

twenty-year statutory period. This Court agreed with Mask. This Court noted that the release and surrender contained quitclaim language and that a quitclaim instrument operates as a valid transfer of real property interests. This Court then stated:

> Were this not so and defendants' contention accepted, termination of plaintiffs' interests by running of the 20-year period would have the effect of treating as abandoned those interests which were being actively maintained, including this lease which was actively maintained for nearly a 10-year period of time from 1944 until 1954. This cannot be so. Herein, the property interests could not commence to become dormant after the original lease to Sun Oil Company dated May 31, 1944, until at least relinquishment and transfer back to lessors of said lease rights in 1954. [*Id.* at 32.]

Hence, this Court concluded that the 1971 lease came within the twenty-year period of the 1954 transfer.

NMHF noted that certain commentators have read *Mask* as holding that the lease continues until it expires by its terms. Brown, *Statutes promoting marketability of oil and gas titles: The Michigan dormant minerals act and its counterparts after twenty-five years,* 15 Mich Real Property R 145, 148 (1988); Brown, *The Michigan dormant minerals act,* 10 Mich Real Property R 116, 122 (1983). The Benchleys argued that the language in *Mask* which could be so construed was dicta.

The parties agreed to submit their dispute to the trial court on stipulated facts.

At oral argument, the Whitmills argued that "leased" meant held under a lease and, therefore, the twenty-year period did not begin to run until

the lease expired or was cancelled for nonpayment of rent. The Whitmills also noted that the statute's preamble provided for the termination of dormant oil and gas interests.

The preamble provides:

> An act to provide for the termination of dormant oil and gas interests in land owned by persons other than the owners of the surface and for the vesting of title to same in the surface owners in the absence of the filing of a notice of claim of interest within a specified period of time.

The circuit court held that the purpose of the statute was to facilitate the development of gas and oil resources. The statute also reduced the likelihood that the presence of unknown or unlocatable owners would hinder or prevent the development of those resources. The court held that the leases executed provided for transfer back to the lessors and that the recorded lease was a record of this transfer. Thus, the court concluded that the expiration of the lease was itself a transfer of the interest and commenced the running of the twenty-year period. Hence, the Whitmills' and NMHF's predecessors' recordings in 1977 and 1978 complied with the statute.

The Benchleys appeal, arguing that the circuit court's decision was clearly erroneous. The Benchleys contend that MCL 554.291; MSA 26.1163(1) requires a recorded instrument evidencing the intention of the owner of the oil and gas rights to retain interest in the property. The Benchleys note that recording requirements allow interested parties to quickly determine whether a severed interest in oil and gas rights has been abandoned. On the other hand, where a long-term lease is involved, interested parties would not have the ben-

efit of learning when or if the lease was termi-
nated without contacting the owner of the rights
or the lessee. The Benchleys further argue that
the language in *Mask* is dicta and that the *Mask*
panel ultimately relied on recorded documents in
reaching its result. The Benchleys contend that
the circuit court clearly erred when it ruled that
the recorded lease evidenced a transfer back to the
Whitmills and Curtises. Citing *Wagner v Dooley,*
90 Mich App 759, 765-766; 282 NW2d 469 (1979),
the Benchleys also argue that NMHF's predecessors,
the Curtises, could not rely on the Cudneys' re-
ceipt of lease payments and that the Curtises, as
owners of the severed gas and oil interests, had to
comply with the statute themselves. Finally, the
Benchleys argue that the circuit court erred when
it ruled that the deeds Edwin J. Whitmill executed
in 1952 were invalid. Hence, the Benchleys con-
tend that Oak G. Whitmill, Ruby M. Straus, Lloyd
B. Whitmill, and Ralph E. Whitmill, as owners of
the severed oil and gas interests, failed to preserve
their interests as required by the statute.

The Whitmill heirs argue that the statute was
complied with because the property was leased for
a ten-year period and the lease was recorded
throughout that period. The Whitmill heirs con-
tend that if the rights are leased they are not
dormant and should not be deemed abandoned
under the statute. The Whitmill heirs claim that
*Mask* applies. NMHF agrees.

MCL 554.291; MSA 26.1163(1) provides that any
person holding severed oil and gas rights is
deemed to have abandoned his interest in favor of
the surface owner unless he performs one or more
of the enumerated acts of possession during any
twenty-year period. *Walch v Crandall,* 164 Mich
App 181, 187; 416 NW2d 375 (1987). The enumer-
ated acts include selling, leasing, mortgaging, or

transferring such interest by recorded instrument. *Id.* By requiring a periodic recording of mineral interests in the register of deeds office, once every twenty years, the Legislature provided a means of insuring that a person interested in purchasing or leasing mineral rights would have information, not older than twenty years, about the identity and whereabouts of the owners of those mineral rights. *Oberlin v Wolverine Gas & Oil Co,* 181 Mich App 506, 511; 450 NW2d 68 (1989). Furthermore, the mineral rights would not have to be transferred by sale, lease, or mortgage every twenty years because their owner could file a claim of interest to preserve his rights. *Id.* at 512.

Here, more than twenty years passed between the leases recorded in 1951 and 1952 and the leases recorded in 1977 and 1978 and, therefore, the oil and gas rights vested in the Benchleys. We hold that the language in *Mask* which supports a contrary result was dicta. Moreover, we agree with the Benchleys that the circuit court clearly erred when it concluded that the leases themselves evidenced a transfer when the primary ten-year term ended. There was no surrender filed by Sun Oil Company, as in *Mask,* which would qualify as a recorded transfer.

Reversed.