KINNE *v.* SWANSON CONSOLIDATED OIL CO.

1. MINES AND MINERALS—PURPOSE OF OIL AND GAS LEASES.
   The purpose of an oil and gas lease, the object for which it is given, is production.

2. SAME—CONSTRUCTION OF OIL AND GAS LEASES.
   Oil and gas leases are to be construed for the benefit of the lessor and against the lessee.

3. SAME—OIL AND GAS LEASES—"OPERATION."
   In oil and gas lease limited to run "for three years and so long thereafter as operated for oil or gas," the word "operated" means "production," hence where lessee was not producing oil or gas at end of specified time the lease terminated.

Appeal from Arenac; Shaffer (John C.), J. Submitted April 10, 1940. (Docket No. 95, Calendar No. 41,021.) Decided June 3, 1940.

Bill by Harry C. Kinne against Swanson Consolidated Oil Company, a Michigan corporation, John W. Johnson, Walter W. Russell, and others for an accounting, a receivership, and to clear title to land. Cross bill by defendants Johnson and Russell against plaintiff to set aside a lease and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Earl R. Chapin,* for plaintiff.

*Montigel & Knorr* and *McNamara & Browning,* for defendants.

BUSHNELL, C. J. Edward E. Metzger, the owner of certain lands in Arenac county, gave an oil and gas lease on November 29, 1933, to Hagan & Hagan, to run "for three years and so long thereafter as operated for oil or gas." The lease covered 170 acres

located in Clayton township. The lessees agreed to drill a well within 12 months or thereafter pay 50 cents per acre annually until the well was drilled. The lease was extended on October 24, 1936, for an additional year under the same terms, except that the delay rental was increased to $1 per acre.

This lease was assigned by Hagan & Hagan on January 31, 1934, to Dorothy Heaton, who assigned to plaintiff Kinne on February 10, 1937. On October 19, 1937, Kinne assigned a portion of his leasehold interest in the land to defendants Johnson and Russell, who assigned part of their interest to defendant Swanson Consolidated Oil Company on April 14, 1938. Prior to the assignment by Kinne to Johnson and Russell, he had assigned another portion of his leasehold interest to Hal-Be-Oyle Company, and it is claimed by defendants that the original grant from Metzger to Hagan & Hagan, under which they claim, was kept alive by drilling operations started by Hal-Be-Oyle Company about August 1, 1937. Plaintiff Kinne, however, claims that the assignment to Hal-Be-Oyle Company was "canceled and terminated" because no producing well was completed by November 29, 1937, and that under a new lease, which he obtained on September 25, 1937, from Metzger, he assigned the interest formerly held by Hal-Be-Oyle Company to the Detroit Mecosta Corporation. Defendants deny "cancellation" of the Hal-Be-Oyle assignment and claim that the Detroit Mecosta Corporation completed the drilling as an associate of Hal-Be-Oyle Corporation and not as assignee of any new Metzger-Kinne lease. The result of this drilling was a dry hole.

Kinne contends that the Metzger-Hagan lease of November 29, 1933, expired on November 29, 1937, because no producing well was completed on the land during this period.

On March 19, 1938, Kinne assigned to Swanson Company a portion of his rights under the new lease, and this assignee agreed to pay Kinne $10,000 out of production. Swanson Company completed a' producing well and repudiated the agreement with Kinne on the ground that they are operating under the Metzger-Hagan lease rather than the Metzger-Kinne lease.

The trial court held that the original lease from Metzger to Hagan & Hagan had expired and granted plaintiff's prayer for equitable relief. Defendants appeal from the decree entered.

Decision as to whether or not the original lease from Metzger to Hagan & Hagan expired on November 29, 1937, depends upon the meaning of the word "operated" as used in that lease. The trial judge summed up the issue by saying:

"It is the claim of the plaintiff that the term or word 'operated' means production of oil or gas. It is the contention of the defendants that the word 'operated' means the taking of any steps for the exploration leading to the production for oil or gas. * * * Under the circumstances, I am going to find in this case that the word 'operated' for oil or gas means the production of oil or gas within the terms of the lease, or its extension."

Oil and gas leases usually provide that they are to run for a definite period and so long thereafter as oil or gas is produced. Authorities construing such leases are of little aid in the instant case because of the obvious difference between the words "operated" and "produced." Cases involving clauses reading, "so long thereafter as developed or operated" and "so long thereafter as operated or producing" are of doubtful value in determining the meaning of the word "operated" when used alone.

The development of the terminology of oil and gas leases is treated in 2 Summers, Oil and Gas (Perm. Ed.), chap. 10. Section 287 (vol. 2, p. 109) reads in part:

"As a result of their experience with the definite-term lease, it seems to have dawned upon both lessors and lessees that a lease of land for oil and gas purposes should be limited to continue for the productive life of the leased premises. This idea seems to have been first used by attaching to the habendum clause of the long definite-term lease a provision that the lease should continue thereafter as long as oil or gas were produced from the demised land in paying quantities."

In view of the desirability of forcing a lessee to drill within a reasonable period of time, a clause requiring the lessee to drill within a specified time, or else pay delay rental, was added. Summers discusses the short definite-term lease with a "thereafter" clause and a "drill or pay" clause in section 288 (vol. 2, p. 113 *et seq.*):

"This type of habendum, when used in connection with the 'drill or pay' type of drilling clause, gave considerable relief to the lessee from the standpoint of a long period of rent paying. The lessee could drill or pay, at his option, within the definite term. If he did neither, the lease terminated at the end of the definite term; but, if he produced oil or gas within the term and at the end thereof, he could extend the lease beyond it for the producing life of the property."

This development was followed by an attempt by lessees, through a clause in leases, to extend the period of exploration indefinitely by mere payment of delay rentals. In section 290, Summers shows how this attempt was defeated by judicial construction and interpretation.

As the trial court in the instant case said, ''the purpose of an oil and gas lease, the object for which it is given, is production.''

Defendants' interpretation of the word ''operated'' would lead to a situation where interest in lands could be held for an indefinite period of exploration by the payment of mere delay rentals, and a lessee could postpone activity on the leased land for whatever term he might desire without being required to do any productive drilling.

The first case involving the construction of an oil and gas lease in this jurisdiction was *J. J. Fagan & Co.* v. *Burns,* 247 Mich. 674 (67 A. L. R. 522). Mr. Justice Fead, speaking for the court, referred to the development of the law of oil and gas as set up by the text writers, and the court committed itself to the proposition stated by Summers, ''that oil and gas leases are to be construed for the benefit of the lessor and against the lessee.''

The authorities cited require the holding that the word ''operated'' as used in this lease means production of oil or gas. This was the view taken by the trial court. In that view we concur.

Decision of the controlling question makes it unnecessary to discuss other questions raised. The decree is affirmed, with costs to appellee.

Sharpe, Potter, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.