*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLAN H. LEHMAN and DEBRA J. LEHMAN,

Plaintiffs-Appellees,

v

SUSAN K. LEHMAN,

Defendant-Appellant.

UNPUBLISHED
July 18, 2025
11:24 AM

No. 371957
Kent Circuit Court
LC No. 23-009130-CH

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

Harold Lehman quitclaimed real property to himself and his sons, Charles Lehman and plaintiff Allan H. Lehman, as joint tenants with full rights of survivorship. Harold died, followed by Charles's death several years later, leaving Allan as the sole living grantee. Charles's wife, defendant Susan K. Lehman, claims an interest in the property pursuant to a warranty deed that Charles executed before his death conveying his interest in the property to himself and Susan. Susan maintains that Harold's quitclaim deed failed to convey the property to Allan and Charles because Harold never delivered the deed. She asserts that Allan and Charles inherited the property pursuant to the terms of Harold's will, which did not contain the survivorship language, rendering the fact that Charles predeceased Allan irrelevant. Susan appeals by right the trial court's order granting summary disposition in favor of Allan and his wife, plaintiff Debra J. Lehman. We conclude that Harold delivered the deed to Allan with the intent to convey a present interest in the property to Allan and Charles. We therefore affirm the trial court's order granting Allan and Debra's motion for summary disposition and quieting title in their favor, albeit based on reasoning different from that of the trial court.

## I. FACTS AND PROCEEDINGS

This case concerns real property located in Kent County, Michigan, on which Lehman's Auto Service was located. On November 2, 2007, Harold, as the survivor of himself and his deceased wife, Helen R. Lehman, executed a quitclaim deed conveying the property to himself, Allan, and Charles as joint tenants with full rights of survivorship. On the same date, Harold executed a will that stated, in relevant part:

Prior to this Will I have deeded certain properties to those people named in the deeds. It is my intent that those deed [sic] are proper disposition of the property.

In the event I have failed or neglected to deed all property I own, my desires are as follows:

Lehman's Auto Service property at 8418 14 Mile Road, approximately 19 acres to my sons, Allan Lehman and Charles Lehman upon the time of my death. The contents of the shop and monies received from towers and commercial signs will go to Allan and Charles Lehman.

The will did not include the survivorship language contained in the deed. Harold executed an updated will on April 15, 2008, that contained the identical provision stated above, but added that Charles would receive "the newest beige Honda four wheeler."

Harold died on August 23, 2008. On December 17, 2008, Allan recorded Harold's quitclaim deed. For several years after Harold's death, Allan and Charles used the property to operate the auto service business and leased portions of the property to third parties. In 2018, Susan executed a marital status affidavit and spousal consent to a lease amendment pertaining to the lease of a portion of the property for a cell tower. The lease referred to Allan and Charles as the "Landlord." The spousal consent to the amendment stated that Susan waived "any and all homestead and/or dower or curtesy rights" she might have in the amendment and property.

Thereafter, Allan and Debra contacted their attorney, James L. Koetje, to assist them in preparing estate planning documents. Koetje sent Charles a September 27, 2021 letter regarding the auto service business and the property. The letter stated, in relevant part:

After a review of records, it appears that no partnership agreement exists for Lehman['｜]s Auto Service upon the death of either you or Allan.

In addition, the real estate that Lehman['｜]s Auto Service operates (8418 14 Mile Rd, Cedar Springs, MI 49319) is currently titled in the name of Allan Lehman and Charles Lehman, as joint tenants with full rights of survivorship. The real estate therefore would pass to the survivor of you or Allan and would not pass to your spouses.

It is my understanding that you and Allan would like any partnership interest to be bought out by the survivor of the two of you so that the value of the partnership would pass to each of your spouses/families. A partnership agreement would be in the best interest of both of you so that you could plan for the death of either or both of you. The real estate should also be transferred to identify this property as "tenants in common" so that a half interest would pass to your spouse/family should you predecease Allan and if Allan should predecease you his half interest would pass to his spouse/family.

Charles did not respond to Koetje's letter for nearly a year. On August 26, 2022, he executed a warranty deed conveying to himself and Susan "all of his right, title and interest in the property." Two days later, Charles and Susan's attorney, James F. Scales, responded to Koetje's

letter. Scales proposed severing the joint tenancy into undivided 50% shares as tenants in common. He also proposed a written co-tenancy agreement stating that the property would be listed for sale and the proceeds divided equally. Charles's warranty deed was recorded on September 8, 2022.

Charles died on September 28, 2022, before any changes were made regarding the ownership of the property. On November 28, 2022, Susan recorded her affidavit regarding the property. In her affidavit, she stated that Harold's quitclaim deed did not convey the property to Harold, Allan, and Charles with rights of survivorship because the deed was neither recorded nor delivered to Charles before Harold died. Susan further stated that because the deed did not convey the property, it passed to Allan and Charles without rights of survivorship pursuant to Harold's will. She maintained that Allan and Charles's estate currently owned equal shares of the property.

On February 6, 2023, Allan executed a quitclaim deed conveying the property to himself and Debra. In July 2023, Allan and Debra obtained a title commitment that required them to file an action to quiet title and record a final, non-appealable judgment vesting title to the property in them. Thereafter, they filed this action to quiet title. Susan filed an answer to the complaint along with affirmative defenses, claiming that the trial court lacked subject-matter jurisdiction, which rested solely with the probate court, and that Harold's quitclaim deed was invalid as a matter of law.

Allan and Debra moved for summary disposition under MCR 2.116(C)(10), asserting that Harold's quitclaim deed was valid. They asserted that Harold executed quitclaim deeds transferring most, if not all, of his real properties to himself and one or more of his children as joint tenants with rights of survivorship, including the property at issue—the auto service property. Harold showed Allan and Debra all the deeds to the properties and told them that he intended to show the deeds to the child or children for whom each joint tenancy was created. Allan testified that Harold wanted his children to see the deeds "and know what they were getting." Harold delivered the deed pertaining to the auto service property to Allan, who went with Harold to Crown Title to ensure that the deed was properly drafted and created a joint tenancy with rights of survivorship as was Harold's intent. Cindy Hewitt at Crown Title confirmed that the deed created a joint tenancy with rights of survivorship and that Harold, Allan, and Charles jointly owned the property pursuant to the deed. Allan placed the deeds in Harold's safe and gave them to the child or children listed on the deeds after Harold's death. Charles acquired other property in the same manner that he acquired the auto service property, but Susan challenged only the deed pertaining to the auto service property.

In their motion, Allan and Debra argued that Harold intended for his children to exercise ownership of the properties with Harold during his lifetime. They relied on Allan's deposition testimony stating that Harold informed his children that the children owned the properties "then and now" and were responsible for the property taxes for the remainder of his lifetime. According to Allan, Harold's children received their property when Harold told them that the property belonged to them, but they received the deed to the property after Harold's death. Allan and Debra asserted that both of Harold's wills stated his intent that the quitclaim deeds conveyed his properties to his children. The wills further stated, in the event that the deeds did not convey all of his properties, they were to be distributed as set forth in his will.

-3-

Further, Allan and Debra asserted that Harold's will was not probated, and Allan and Charles owned the auto service property as joint tenants with full rights of survivorship, which Charles acknowledged through his attorney's letter expressing Charles's agreement to sever the joint tenancy. Allan and Debra maintained that Charles's deed granting the property to himself and Susan did not partition the property and that Allan solely owned the property as the survivor of himself and Charles after Charles's death. Moreover, they claimed that they jointly owned the property pursuant to Allan's quitclaim deed conveying the property to himself and Debra and that Susan's affidavit clouded their title.[1]

In response to Allan and Debra's motion, Susan argued that Harold's deed was invalid because it was not delivered during Harold's lifetime, but rather, it was kept in Harold's gun safe where Harold could revoke it or alter it at any time. Because the deed was not delivered, and Harold retained control of it, it conveyed no present interest in the land. Susan asserted that Harold intended to convey the property after his death because he directed Allan to deliver the deed after he died. Therefore, she maintained that the evidence did not show that Harold intended to convey a present and irrevocable interest in the property at the time that he executed the deed.

The trial court granted Allan and Debra's motion. The court noted that Michigan is a race-notice state under MCL 565.29, meaning that "a later interest holder in property may take priority over a prior conveyed interest only if the later interest holder takes in " 'good faith.' " The court determined that Susan was not a good-faith purchaser because the evidence showed that she and Charles were aware of "the 14 Mile Deed," i.e., Harold's quitclaim deed. The court stated as follows:

> Between 2008 (when the 14 Mile Deed was recorded) and Charles' death, Susan signed documents relating to the leasing of the Property for billboard/cell tower use. Further, as indicated by the evidence, Charles received correspondence from Attorney Koetje regarding the status of the land as early as 2021, and indicating that the property should be transferred to tenancy in common so that upon either Allan or Charles' death, land would transfer to the surviving spouse rather than wholly to the surviving brother. Susan cannot say she did not receive this letter, or had no knowledge of it, because—at her and Charles' request—Attorney Scales responded to the 2021 letter, "substantially agreeing" with the steps Attorney Koetje proposed.
>
> For Susan to now argue that the 14 Mile Deed was invalid because Harold never showed it to Charles prior to recording appears disingenuous, as her (and Charles') actions prior to recording the Susan Affidavit show a completely different understanding as to the ownership of the property. The Court finds that Susan was on notice of the 14 Mile Deed that was recorded in 2008, and that both sides delayed in addressing the issue of joint tenancy. Susan cannot now claim she did not have knowledge of the 14 Mile Deed or that Harold's 2008 Will otherwise states a

---

[1] In addition, Allan and Debra disputed Susan's claim that the trial court lacked subject-matter jurisdiction over the dispute. On appeal, Susan does not challenge the trial court's determination that it had subject-matter jurisdiction to decide this case.

different outcome when her actions show prior knowledge of the 14 Mile Deed. As such, the Court finds there is no genuine issue of material fact regarding Susan's knowledge of the 14 Mile Deed. Her prior knowledge regarding the property does not make her a "good faith purchaser" as she was on notice of the prior recorded deed, and her Affidavit must be voided.

Thereafter, the trial court entered an amended opinion and order, stating that the order was final and closed the case.

Susan moved for reconsideration, arguing that the trial court's determination that she was aware of Harold's quitclaim deed had no bearing on the issue presented. She maintained that the single, material legal issue involved was whether the deed was delivered with the intent to convey a present interest in the property. The trial court denied the motion, stating that it "stands by its initial decision." This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision in an action to quiet title. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). We also review de novo a trial court's decision on a motion for summary disposition. *Id.* A motion under MCR 2.116(C)(10) tests the factual support of the plaintiff's complaint. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506; 991 NW2d 230 (2022). In reviewing a motion under subrule (C)(10), this Court considers the pleadings, affidavits, depositions and other evidence in the light most favorable to the nonmoving party. *Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013). The opposing party may not rest upon mere allegations or denials in its pleadings, but rather, must provide documentary evidence setting forth specific facts that establish a genuine issue for trial. *Anderson*, 341 Mich App at 506. Summary disposition is appropriate if the evidence fails to establish a genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. *Houston*, 335 Mich App at 557. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (citation omitted).

## III. ANALYSIS

Susan argues that Harold's quitclaim deed failed to convey the property to Allan and Charles because Harold did not deliver the deed during his lifetime. She asserts that Harold's will must be probated and the property conveyed to Allan and Charles's estate pursuant to the terms of Harold's will, which did not contain the survivorship language. A "joint tenancy with full rights of survivorship is comprised of a joint life estate with dual contingent remainders." *Albro v Allen*, 434 Mich 271, 275; 454 NW2d 85 (1990) (quotation marks and citation omitted). Because "the dual contingent remainders of the joint tenancy with full rights of survivorship are indestructible," "[a] cotenant's contingent remainder cannot be destroyed by an act of the other cotenant." *Id*. at 276 (quotation marks omitted). Property held between two people as joint tenants with full rights of survivorship automatically passes to the surviving cotenant after a cotenant's death. *In re VanConett Estate*, 262 Mich App 660, 667-668; 687 NW2d 167 (2004). Therefore, if Harold's quitclaim deed conveyed the property to Harold, Allan, and Charles, as joint tenants with full rights of survivorship, Allan became the sole owner of the property after Charles's death.

"A deed takes effect from the time of its delivery, and not from the time of its date, execution or recording." *Ligon v Detroit*, 276 Mich App 120, 128; 739 NW2d 900 (2007) (quotation marks, citation, and brackets omitted). "Delivery of a deed is essential to pass title." *Blodgett v Snobble*, 295 Mich 374, 377; 295 NW 192 (1940). "The purpose of the delivery requirement is to show the grantor's intent to convey the property described in the deed." *Energetics, Ltd v Whitmill*, 442 Mich 38, 53; 497 NW2d 497 (1993). "The test is whether it can be said that delivery of the deed was such as to convey a present interest in the land." *Tighe v Davis*, 283 Mich 244, 249; 278 NW 60 (1938) (quotation marks and citation omitted). The grantor must have delivered the deed during his lifetime; a deed not delivered during the grantor's lifetime is ineffectual. *Hynes v Halstead*, 282 Mich 627, 634; 276 NW 578 (1937). The party relying on the deed has the burden of proving delivery. *Ligon*, 276 Mich App at 130. The recording of a deed raises a presumption of delivery, which the opposing party may rebut with evidence showing that no delivery occurred. *Blodgett*, 295 Mich at 377-378.

The record shows that Harold conveyed a present interest in the property to himself, Allan, and Charles. Perhaps the most telling indication of Harold's intent to convey a present interest in the land was the inclusion of himself as a grantee along with Allan and Charles. If Harold's intent was to convey the property to Allan and Charles after he died, he would not have included himself as a grantee. Moreover, Harold and Allan took the deed to Crown Title where they spoke with Hewitt about the conveyance. Hewitt averred that Allan handed her the deed and told her, while Harold was able to hear, that Harold wanted her to confirm that the deed was properly drafted and created a joint tenancy with rights of survivorship among Harold, Allan, and Charles. Allan told Hewitt that Harold's health had been declining. Hewitt confirmed that Harold, Allan, and Charles "now" owned the property as joint tenants with rights of survivorship.

Allan testified that Harold's intent was to convey all of his properties to his children in the same manner—before his death as joint tenants with rights of survivorship along with himself. Harold's will reflected his intent, stating:

> *Prior to this Will* I have deeded certain properties to those people named in the deeds. *It is my intent that those deed[s] are proper disposition of the property*.
>
> In the event I have failed or neglected to deed all property I own, my desires are as follows . . . .

Allan testified that Harold told his children that they owned the properties he gave to them "then and now" and were responsible for paying the taxes on the properties. Harold told Allan that he intended to show the deeds to the child or children named on each deed. Regarding the auto service property deed, Allan testified that Harold told him, " 'I want you to have this. This is yours and your brother[']s, and I want you to have it now before I die.' " "A delivery to one of several joint grantees, in absence of proof to the contrary, is delivery to all." *Reed v Mack*, 344 Mich 391, 397; 73 NW2d 917 (1955). Harold instructed Allan to put all of the deeds in the safe in Harold's gun room and to distribute the deeds to the recipients after Harold's death. Allan had the combination to the safe.

Susan argues that Harold did not intend to convey a present interest in the property to Allan and Charles because he directed Allan to put the deed in Harold's safe where Harold could access

and revoke it. Susan contends that Harold therefore did not deliver the deed during his lifetime. The actions of all persons involved belie Susan's argument. In determining whether the grantor intended to pass title, courts may consider the subsequent conduct of the parties. *Resh v Fox*, 365 Mich 288, 292; 112 NW2d 486 (1961). No evidence indicates that Harold attempted to revoke the deed, and, after Harold died, Allan and Charles believed that they owned the property as joint tenants with rights of survivorship in accordance with the deed. The letters that their attorneys exchanged in 2021 and 2022 evidence their understanding regarding their ownership of the property. In addition, it is undisputed that Harold's will was never admitted to probate. Although Susan relies on caselaw holding that a testamentary conveyance was intended when the grantor retained access to the deed by placing it in a desk or in a joint safety deposit box, see *Wandel v Wandel*, 336 Mich 126, 131-132; 57 NW2d 468 (1953), those circumstances are distinguishable from the instant case. Here, the record shows that Harold did not intend to make a testamentary conveyance, but rather, he intended to convey to Allan and Charles a present interest in the property. Susan failed to present any evidence indicating a contrary intent.

The trial court decided this case on the basis that Susan was not a good-faith purchaser of the property because the record shows that she had prior notice of the deed. Although we agree that the record demonstrates Susan's notice of the deed, we do not believe such notice is determinative of whether Harold delivered the deed during his lifetime. Nevertheless, because the trial court reached the correct result, we will not reverse the court's decision. This Court will not reverse a trial court order that reaches the correct result for the wrong reason. *Grand Trunk Western R, Inc v Auto Warehousing Co*, 262 Mich App 345, 354; 686 NW2d 756 (2004). Accordingly, we affirm the trial court's order granting Allan and Debra's motion for summary disposition and quieting title to the property in their favor.

Affirmed.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett